UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW SELEVAN,

         Movant,

     -v-

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

         Respondent.

20-mc-282 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

  The U.S. Securities and Exchange Commission ("SEC" or "Commission") has issued a subpoena to T.D. Bank, N.A. ("TD Bank"), seeking bank records associated with a bank account in movant Andrew Selevan's name. Dkt. 4 ("Mot. to Quash") at 7, 9–10. Selevan seeks an order preventing the SEC from obtaining these documents and quashing the subpoena. *Id.* at 1, 3. For the following reasons, the Court denies Selevan's motion and orders the subpoena enforced.

**I. Background**

  On November 5, 2019, the SEC opened an investigation into Norse Holdings, LLC ("Norse Holdings").[1] Dkt. 9 ("SEC Opp'n") at 1. Since then, it has obtained evidence that Norse Holdings, through Seth Levine, its president, raised more than $23.9 million from more than 100 investors for investment in various "limited liability real estate companies" (the "LLCs"). *Id.* at 2. It has further determined that Norse Holdings maintained accounts for each of these LLCs at TD Bank, but that investor funds were not always deposited into the proper LLC bank account. *Id.* Rather, such funds were often deposited into one of two Norse Holdings

---

[1] The facts that follow are largely drawn from the SEC's opposition brief and have been attested to as correct by an SEC staff attorney, under penalty of perjury. *See* Dkt. 9-1 at 1–2.

corporate accounts. *Id.* The Commission is investigating whether these funds were used consistent with the representations made to investors at the time of investment, and whether Norse Holdings has violated the securities laws or regulations promulgated thereunder. *Id.* at 1–2.

Selevan is an attorney admitted to practice in New York and New Jersey. *See* Dkt. 11 ("Reply") at 1. During the period under investigation, Selevan acted as general counsel to Norse Holdings and reported to Levine. SEC Opp'n at 2. According to Selevan, he "maintained his law office [at] the premises of his primary client, Norse Holdings LLC." Reply at 1. The SEC has averred that it is unaware of any other clients of Selevan's. *See* SEC Opp'n at 2. Selevan states that he has "many clients and entities for which he performed legal services," although he does not identify any. Reply at 2.

The SEC has obtained evidence of significant transactions between the Norse Holdings corporate accounts discussed above and a separate TD Bank account in Selevan's name. *See* SEC Opp'n at 2–3 (noting one $260,000 transfer and one $1.2 million transfer). In light of these large transactions and Selevan's role as general counsel, the SEC believes that the Selevan bank account may be operating as another Norse Holdings corporate account. *Id.* at 3. To examine the role of the Selevan account, on August 3, 2020, the Commission issued a subpoena to TD Bank seeking various bank records associated with the account. *See* Mot. to Quash at 7.

On August 10, 2020, Selevan moved to quash this subpoena pursuant to the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3410(a), on the grounds that the records sought are protected by attorney-client privilege and client confidentiality under New Jersey's legal ethics rules. *See* Mot. to Quash at 1, 3. On August 20, 2020, the SEC opposed Selevan's motion, *see* SEC Opp'n, and on August 24, 2020, Selevan filed his Reply.

**II.     Legal Standard**

The RFPA provides the sole means for a bank customer to challenge in court the disclosure of documents subpoenaed from that customer's bank. *See* 12 U.S.C. § 3410(e). It also sharply limits judicial review of such challenges. If the Court finds that there is a "demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records are relevant to that inquiry, it shall deny the motion." *Id.* § 3410(c). Thus, the Court must assess: (1) whether the SEC has supplied a reason to believe its investigation is legitimate; and (2) whether the SEC has articulated a reasonable belief that the records are relevant to that investigation. If the Court concludes that the SEC has cleared this low bar, it must deny the motion.[2]

**III.    Discussion**

   **A.     The RFPA Factors**

As an initial matter, Selevan appears not to contest the two (and only) RFPA factors guiding the Court's limited inquiry: "It is respectfully submitted that the validity of the SEC investigation is not at issue, nor is the purported relevance of these records controlling." Reply at 3. Rather, he objects to the subpoena on the grounds that it is "clearly over-broad in its scope" and that compliance with its terms would require Selevan to violate his ethical obligations to his clients. *Id.* at 3–4.

For the avoidance of doubt, the Court examines, first, whether the SEC's subpoena satisfies the RFPA factors.

---

[2] By law, the Court must resolve such motions quickly. To minimize delays to agency investigations, the RFPA requires reviewing courts to decide challenges to subpoenas like the one at issue here within seven days of the SEC's opposition thereto. *See* 12 U.S.C. § 3410(b).

First, there is clearly a demonstrable reason to believe that the SEC is pursuing a legitimate investigation. "The SEC is charged by Congress with, *inter alia*, investigating possible violations of the nation's securities laws." *Davidov v. SEC*, 415 F. Supp. 2d 386, 388 (S.D.N.Y. 2006). To discharge this duty, the Commission has been granted "broad power to conduct investigations . . . and in that connection to call for production of relevant materials by those who seem to have them." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1023 (D.C. Cir. 1978).

Here, the SEC represents that it has reason to believe that Norse Holdings may have engaged in violations of the securities laws. *See* SEC Opp'n at 1–2. And it is investigating such potential violations pursuant to a formal investigative order that the Commission issued in November 2019. *See id.* at 1. Selevan has not put forth any reason to consider this investigation illegitimate. Nothing more, therefore, is required. *See, e.g.*, *Feiner v. SEC*, 914 F. Supp. 2d 474, 477 (S.D.N.Y. 2012) ("An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political harassment or intimidation or otherwise in bad faith." (quoting *Pennington v. Donovan*, 574 F. Supp. 708, 709 (S.D. Tex. 1983))).

The Court has similarly little difficulty in concluding that the SEC has developed a reasonable belief that the requested documents are relevant to its investigation of Norse Holdings. On this question, courts in this District are guided by Judge Mukasey's decision in *In re SEC Private Investigation/Application of John Doe re Certain Subpoenas* ("*John Doe*"), No. M8-85, 1990 WL 119321 (S.D.N.Y. Aug. 10, 1990). *Feiner*, 914 F. Supp. 2d at 477. Under *John Doe*, Selevan bears the burden of showing the "basis for his conclusion that the records are irrelevant." *John Doe*, 1990 WL 119321, at *2 (quoting *Hancock v. Marshall*, 86 F.R.D. 209, 211 (D.D.C. 1980)). If he meets this initial burden, the SEC must then show not that the records are

4

relevant, but only that "*there is a reasonable belief* that the records sought are relevant." *Id.* (emphasis added).

Following this approach, the Court finds that this factor also weighs against Selevan. Selevan, tellingly, does not challenge the documents' relevance to the SEC's investigation. Even construing his overbreadth challenge as a challenge to the relevance of *some* of the documents the SEC has requested, the SEC plainly has articulated a reasonable belief in their relevance. Selevan was the general counsel of Norse Holdings, and received substantial transfers from the company into the bank account at issue here. SEC Opp'n at 1–2. Simply put, "[t]he SEC's task is to follow the money." *Feiner*, 914 F. Supp. 2d at 478. Here, the "trail appears to lead directly to accounts" in Selevan's name. *Id.* Records associated with the Selevan account may provide information about the investment scheme being investigated; whether investor funds were diverted for improper purposes; where such funds, if they were diverted, are now located; and Selevan's role and complicity, if any, in wrongdoing. *See* SEC Opp'n at 6. This is more than sufficient to show relevance. *See John Doe*, 1990 WL 119321, at *2 ("By showing that [the customer] has a connection to the activity [the SEC] is charged to investigate, the SEC has shown reason for a belief that the bank records it seeks here contain relevant information.").

Because the SEC's investigation is legitimate and the SEC has a reasonable belief in the relevance of the requested records, the Court must deny Selevan's motion and order the subpoena enforced. *See* 12 U.S.C. § 3410(c).

**B.  Attorney-Client Privilege and Confidentiality**

Instead of addressing the RFPA factors that govern his motion, Selevan focuses almost entirely on the attorney-client privilege. As an ostensible bar to compliance, he also invokes his purported obligations under New Jersey's legal ethics rules. *See* Mot. to Quash at 3; Reply at 2–3. He argues that, to the extent such obligations conflict with the dictates of the RFPA and the

SEC's duly issued subpoena, the latter must yield. Reply at 2–3. In support, he relies on an opinion letter authored by a person he identifies as a "New Jersey ethics practitioner," which speaks to Selevan's duties under state law. *See id.* at 2. The SEC counters that none of the documents sought are protected because "courts have consistently held that bank records are not protected by the attorney-client privilege," *Feiner*, 914 F. Supp. 2d at 479 (collecting cases), and because New Jersey's confidentiality rules constrain Selevan's actions, not those of TD Bank, the SEC, or the Court. The Court emphatically agrees with the SEC.

First, as to attorney-client privilege, Selevan's position does not find any support in the case law. His attempt to cast the records of his bank account as privileged is, in fact, frivolous. Courts have uniformly held that bank accounts and similar financial records are *not* protected by attorney-client privilege. *See id.*; *see also, e.g.*, *SEC v. First Sec. Bank of Utah, N.A.*, 447 F.2d 166, 167 (10th Cir. 1971) ("The deposit and disbursement of money in a commercial checking account are not confidential communications. The records are the property of the bank and are made by it for its business purposes."); *Johnson v. SEC*, No. M-18-304 (JFK), 1994 WL 67954, at *1 (S.D.N.Y. Mar. 1, 1994) ("[T]he attorney client-privilege does not protect bank documents[.]"); *Grafstrom v. SEC*, 532 F. Supp. 1023, 1024 (S.D.N.Y. 1982) ("Since the records are sought from banks and the Fidelity Daily Income Trust, they cannot be protected by the attorney-client privilege."). That is because the attorney-client privilege protects only communications between attorneys and their clients made for the purpose of providing legal advice. *See In re Six Grand Jury Witnesses*, 979 F.2d 939, 945 (2d Cir. 1992); *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) ("The doctrine protects only those disclosures that are necessary to obtain informed legal advice and that would not be made without the privilege."). Materials tangentially related to the attorney-client

relationship that do not reflect such communications, such as bank records, are, in contrast, not protected. *See In re Six Grand Jury Witnesses*, 979 F.2d at 945. Indeed, financial statements, even if reflecting monetary transfers between attorney and client, are not, without more, privileged. *See Lefcourt v. United States*, 125 F.3d 79, 86 (2d Cir. 1997) ("As a general rule, a client's identity and fee information are not privileged."); *Goldberger & Dubin*, 935 F.2d at 504 (identifying which of a law firm's clients "make substantial cash fee payments is not a disclosure of privileged information").

Selevan does not identify any legitimate justification for deviating from these well-settled principles. For the most part, he bypasses the initial question of whether attorney-client privilege applies. Instead, he argues that, assuming the privilege applies, the SEC has not satisfied the crime-fraud exception to the privilege. *See* Reply at 3 ("The controlling point is that they have not showed, at least so far, that his legal services were utilized in furtherance of crime or fraud."). Selevan's contention that, "so far," with the SEC's investigation ongoing, he has yet to be accused of participating in a crime, is immaterial. Because the Court finds that Selevan's bank records are not protected by the attorney-client privilege in the first place, there is no occasion to reach that issue.

Beyond this, Selevan relies, without citation, on the assertion that some "higher standard" should apply when an attorney trust account is involved, given that a "fiduciary duty arguably applies." Reply at 1. But "contrary to [Selevan's] unsupported assertion, the attorney client-privilege does not protect bank documents merely because they arise from transactions involving an attorney's trust account." *Johnson*, 1994 WL 67954, at *1 (citing *Gannet v. First Nat'l State Bank of N.J.*, 546 F.2d 1072, 1076 (3d Cir. 1976)).

7

Finally, Selevan argues that the subpoena must be quashed because, per the advice of Kim Ringler, an ethics practitioner in New Jersey, Selevan's duty of confidentiality to his clients requires that he not disclose their confidential information to the SEC. *See* Mot. to Quash at 3; Reply at 2–3 (citing N.J. Rule of Professional Conduct 1.6 ("Rule 1.6")); Dkt. 11-2 ("Ringler Ltr."). That argument, too, is unavailing. First, as the SEC correctly notes, Rule 1.6 speaks of an attorney's duties to his or her clients—not limitations on access to confidential information once it is out of the attorney's control, *i.e.*, in the possession of a bank subject to an SEC subpoena. Even Ms. Ringler's letter seems to acknowledge as much, emphasizing only Selevan's duty to "oppose production of client information," and not any affirmative limit on either the SEC's authority to seek that information or this Court's authority to compel its production. *See* Ringler Ltr. At 2. Nothing in Rule 1.6 prevents the Court from adhering to the dictates of the RFPA and ordering TD Bank's compliance with the SEC's duly issued subpoena.

In any event, even if Selevan's own production of confidential information were at issue (which it is not), Rule 1.6(d) permits an attorney to reveal confidential information to the extent necessary "to comply with other law." It is well established, under other states' similarly worded rules of professional conduct, that judicial and administrative subpoenas qualify as such "other law" and thereby authorize attorneys to disclose confidential client information in such contexts. *See, e.g.*, *SEC v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011); *In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 296 (D.D.C. 2019); *FTC v. Trudeau*, No. 03 Civ. 3904, 2013 WL 842599, at *4 (N.D. Ill. Mar. 6, 2013). Accordingly, even if the instant subpoena, and this court order enforcing it, called on Selevan to produce confidential information about his clients, it would not compel him to run afoul of any ethical obligations.

Accordingly, the Court denies Selevan's motion and orders the instant subpoena enforced. TD Bank is ordered to produce the requested records forthwith, and by no later than the close of business on Monday, August 31, 2020.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 4 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 26, 2020
New York, New York